# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 22-1139**                                         **September Term, 2022**
                                                        FILED ON: MAY 25, 2023

CONCERNED HOUSEHOLD ELECTRICITY CONSUMERS COUNCIL, ET AL.,
       PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
       RESPONDENT

AMERICAN LUNG ASSOCIATION, ET AL.,
       INTERVENORS

------

Consolidated with 22-1140

On Petitions for Review of a Final Action
of the Environmental Protection Agency

------

Before: HENDERSON, KATSAS, and PAN, *Circuit Judges*.

## J U D G M E N T

These consolidated cases were considered on the record from the Environmental Protection Agency and on the briefs and arguments of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** that the petitions for review filed by the Concerned Household Electricity Consumers Council and the FAIR Energy Foundation are **DISMISSED**.

\* \* \*

The Concerned Household Electricity Consumers Council ("CHECC") and the FAIR Energy Foundation ("FAIR") unsuccessfully petitioned the Environmental Protection Agency ("EPA") to reconsider its 2009 finding that greenhouse gas emissions from motor vehicles contribute to climate change and thus endanger public health and welfare. CHECC and FAIR now ask this court to review the EPA's decision not to reconsider the 2009 finding. *See* CHECC Am.

Pet. for Rev. (June 28, 2022); FAIR Am. Pet. for Rev. (June 29, 2022); *see also* 42 U.S.C. § 7607(b)(1) (providing for direct review in the D.C. Circuit). We dismiss both cases for lack of standing.

Section 202 of the Clean Air Act requires the EPA to regulate "any air pollutant from any class or classes of new motor vehicles or new motor vehicle engines, which in [its] judgment cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a)(1). In 2009, the EPA found that greenhouse gases from motor vehicles meet that statutory standard for regulation. *See* Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496, 66,497–99 (Dec. 15, 2009) (the "Endangerment Finding"); *see also Massachusetts v. EPA*, 549 U.S. 497, 528–32 (2007) (holding that the Clean Air Act authorizes the EPA to regulate greenhouse gas emissions). In the face of numerous challenges from states and industry groups, we upheld the Endangerment Finding and the EPA's denials of various petitions for reconsideration of that Finding. *See Coal. for Responsible Regul., Inc. v. EPA*, 684 F.3d 102, 116–26 (D.C. Cir. 2012) (per curiam), *rev'd in part on other grounds sub nom. Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014).

CHECC and FAIR filed new petitions for reconsideration of the Endangerment Finding in 2017 and 2019, respectively. In the alternative, they asked the EPA to conduct a new rulemaking under § 553(e) of the Administrative Procedure Act to issue "a new 'Non-Endangerment Finding.'" *See* CHECC 2017 Pet. 1, 4; FAIR 2019 Pet. 3–4, 6; *see also* 5 U.S.C. § 553(e); 42 U.S.C. § 7607(d)(7)(B). The petitions argue that "[s]cientific research since the adoption of the Endangerment Finding has invalidated" the EPA's earlier conclusions regarding the link between greenhouse gas emissions and climate change. CHECC 2017 Pet. 1; *see also* FAIR 2019 Pet. 2. The EPA issued its final denial of the petitions for reconsideration in April 2022. *See* Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act; Final Action on Petitions, 87 Fed. Reg. 25,412 (April 29, 2022). In denying the petitions, the EPA determined that the arguments and evidence that CHECC and FAIR proffered to challenge the Endangerment Finding were "inadequate, erroneous, and deficient." *See* EPA's Denial of Petitions Relating to the Endangerment and Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, at 1 (April 29, 2022), https://www.regulations.gov/document/EPA-HQ-OAR-2022-0129-0053.

Article III of the Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Petitioners seeking relief from this court must therefore show that they meet "the irreducible constitutional minimum of standing," which requires (1) "an injury in fact . . . which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) proof that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 560–61 (cleaned up).

Petitioners fail to meet their burden to establish standing because they provide no evidence that they or any of their members have been injured by the Endangerment Finding. It is well established that "a petitioner whose standing is not self[-]evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto . . . with

2

the petitioner's opening brief." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002). "[T]he petitioner may carry its burden of production by citing any record evidence relevant to its claim of standing and, if necessary, appending to its filing additional affidavits or other evidence sufficient to support its claim." *Id.* at 900–01; *see also Twin Rivers Paper Co. v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019) (collecting cases and noting that "[w]e have reiterated these principles many times"); D.C. Cir. R. 28(a)(7) (codifying this requirement in our local rules).

Here, it is not self-evident from the administrative record that the Endangerment Finding injures petitioners. Neither CHECC nor FAIR is "directly regulated by the challenged rule." *Am. Fuel & Petrochem. Mfrs. v. EPA*, 3 F.4th 373, 379 (D.C. Cir. 2021) (citing *Sierra Club*, 292 F.3d at 900). Yet petitioners submitted no affidavits or other evidence to establish standing, instead merely arguing in their briefs that the Endangerment Finding has injured them or their members. *See* Pet'rs' Br. 31–35. Of course, arguments in "briefs 'are not evidence.'" *Twin Rivers*, 934 F.3d at 613 (quoting *Sierra Club*, 292 F.3d at 901). Under our precedents and Circuit Rule 28(a)(7), petitioners' failure to provide evidence of any injury from the Endangerment Finding is a sufficient ground to dismiss these cases for lack of standing. *See, e.g.*, *Transp. Div. of Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 40 F.4th 646, 660–61 (D.C. Cir. 2022) (holding that petitioners lacked standing because they "neither identified record evidence nor submitted new evidence to this court showing that they have members who" were affected by the challenged agency action); *Util. Workers Union of Am. Loc. 464 v. FERC*, 896 F.3d 573, 578 (D.C. Cir. 2018) (holding that petitioners who "made only conclusory assertions" but "offer[ed] no new affidavits" of cognizable injury lacked standing); *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006) (dismissing petition for review where "petitioners submitted no affidavits or other forms of evidence" of cognizable injury); *City of Waukesha v. EPA*, 320 F.3d 228, 237 (D.C. Cir. 2003) (holding that advocacy group that "provided no affidavit that establishes with specificity and concreteness any particular member . . . that is likely to suffer increased drinking water costs" had failed to establish standing).

In any event, petitioners' theories of standing are fatally flawed. CHECC's claim of representational standing fails because CHECC's arguments do not demonstrate that "at least one of its members [has] standing to bring the petition in his or her own right." *Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 684 (D.C. Cir. 2004) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). CHECC says only that its members are each "a U.S. citizen and a member of a household that pays electricity bills" and that the Endangerment Finding will lead to regulations that increase the households' electricity rates. Pet'rs' Br. 31. But CHECC draws no connection between the Endangerment Finding (which compels the regulation of *motor vehicle* emissions under § 202(a) of the Clean Air Act) and the price of residential electricity. Indeed, CHECC's brief does not identify a single regulation based on the Endangerment Finding that has affected its members. Because CHECC has failed to establish that the Endangerment Finding injured any of its members, it lacks representational standing.

Next, FAIR and CHECC both claim organizational standing — that is, standing to sue in their own rights, rather than on behalf of their members. To evaluate this argument, "we ask, first, whether the agency's action or omission to act 'injured the organization's interest' and, second, whether the organization 'used its resources to counteract that harm.'" *PETA v. USDA*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (alteration omitted) (quoting *Equal Rts. Ctr. v. Post Props., Inc.*, 633

3

F.3d 1136, 1140 (D.C. Cir. 2011)); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (explaining that an organization must assert "more than simply a setback to the organization's abstract social interests"). CHECC's organizational standing argument founders at the outset because it never states what its mission *is*, much less how the Endangerment Finding affects that mission or causes CHECC to expend resources. *See* Pet'rs' Br. 34. For its part, FAIR explains that it "seeks to educate policy makers and the public that abundant energy is the core driver of global prosperity and that free-market energy policies and energy abundance will produce prosperity, security[,] and human flourishing around the world." *Id.* at 33–34. But FAIR gives no hint about how it "used its resources to counteract [any alleged] harm" from the Endangerment Finding. *PETA*, 797 F.3d at 1094 (citation omitted). Accordingly, FAIR has asserted "simply a setback to the organization's abstract social interests," which is insufficient to establish standing. *Havens Realty*, 455 U.S. at 379.

Petitioners' reply brief raises additional arguments in favor of standing. *See* Pet'rs' Reply Br. 3–8. Because those contentions did not appear in petitioners' opening brief, they are forfeited. *See Scenic Am., Inc. v. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) (explaining that parties may forfeit arguments that we have jurisdiction); *Sierra Club*, 292 F.3d at 900 (requiring petitioners to demonstrate standing in their "opening brief"). In any case, we have reviewed the additional arguments and have determined that they are without merit.

For the foregoing reasons, we dismiss the petitions for review for lack of jurisdiction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk